1   MONIQUE OLIVIER (SBN 190385)
    (monique@dplolaw.com)
2   DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
    100 Bush Street, Suite 1800
3   San Francisco, CA  94104
    Telephone: (415) 433-0333
4   Facsimile:  (415) 449-6556

5

6   DEBORAH C. ENGLAND (SBN 122424)
    (dcengland@earthlink.net)
7   LAW OFFICES OF DEBORAH C. ENGLAND
    351 California Street, Suite 700
8   San Francisco, CA  94104
    Telephone: (415) 434-9800
9   Facsimile:  (415) 434-0513

10  Attorneys for Plaintiff and the Putative Class

11

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14  ANDREW BELL, on behalf of himself and        Case No.  13-CV-01199-YGR
    all others similarly situated,
15                                                **PLAINTIFF'S NOTICE OF MOTION AND**
            Plaintiffs,                           **UNOPPOSED MOTION FOR FINAL**
16                                                **APPROVAL OF CLASS SETTLEMENT;**
    vs.                                           **MEMORANDUM OF POINTS AND**
17                                                **AUTHORITIES IN SUPPORT THEREOF**
    DELTA AIR LINES, INC.; and DOES 1 to
18  10, inclusive,

19                                                Date:   October 14, 2014
            Defendants.                           Time:  2:00 p.m.
20                                                Place:  Courtroom 5
                                                  Judge: Hon. Yvonne Gonzalez Rogers
21

22  _____/

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2    TO DEFENDANT DELTA AIR LINES, INC. AND ITS COUNSEL OF RECORD AND ALL

3    OTHER INTERESTED PARTIES:

4          PLEASE TAKE NOTICE THAT on October 14, 2014 at 2:00 p.m. at this Court located at

5    the United States District Court for the Northern District of California, Ronald V. Dellums

6    Federal Building, Oakland in Courtroom 5, Plaintiff Andrew Bell ("Plaintiff" or "Class

7    Representative")[*] and the firms of Duckworth Peters Lebowitz Olivier LLP and the Law Office

8    of Deborah C. England ("Class Counsel") will move and hereby do move the Court for an order

9    granting the following relief:

10          (1)    Confirming as final the certification of the class defined as "all Ready Reserve

11    Employees who were employed by Defendant, in California, beginning March 18, 2009 through

12    March 17, 2014" ("Class," "Class Members") for purposes of settling all claims pleaded in the

13    Action on the terms set forth in the Parties' Stipulation of Settlement, pursuant to Rule 23(a),

14    Rule 23(b)(3), and Rule 23(e) of the Federal Rules of Civil Procedure;

15          (2)    Confirming as final the appointment of Plaintiff Andrew Bell as Class

16    Representative pursuant to Fed. R. Civ. P. 23 and the appointment of Plaintiffs' attorneys as Class

17    Counsel pursuant to Fed. R. Civ. P. 23(g);

18          (3)    Approving the Parties' proposed class action settlement as fair, reasonable,

19    adequate, and binding on all Class Members who did not timely opt out, pursuant to Fed. R. Civ.

20    P. 23(e);

21          (4)    Approving the amount of $7,500 to be paid to the California Labor and Workforce

22    Development Agency ("LWDA") for penalties under the California Labor Code Private

23    Attorneys General Act ("PAGA"), California Labor Code § 2699;

24          (5)    Awarding Plaintiff Andrew Bell a service payment of $7,500 to be paid by

25    Defendant from the Gross Settlement Amount at the time specified in the Stipulation of

26

27          [*] All capitalized terms appearing in this Motion that are not defined herein have the meanings assigned to them in the Stipulation of Settlement (Dkt. 50-3).

28

Settlement, pursuant to applicable legal authorities permitting courts to make such awards where they are fair and reasonable;

(6)     Directing the Parties and the Settlement Administrator to implement the terms of the Stipulation of Settlement pertaining to the distribution of the Net Settlement Amount;

(7)     Making findings of fact and stating conclusions of law in support of the foregoing; and,

(8)     Directing entry of judgment in accordance with the Stipulation of Settlement and in the form proposed by the parties, pursuant to Fed. R. Civ. P., Rules 54 and 58.[†]

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Joint Stipulation of Settlement that has been filed with the Court, and the declarations of Monique Olivier and Sean Combs (Project Manager for Settlement Administrator, Dahl Administration, Inc.), filed herewith in support of this Motion, the other records, pleadings, and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

DATED:  September 29, 2014             Respectfully submitted,

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
LAW OFFICE OF DEBORAH C. ENGLAND


_____/s/ Monique Olivier_____
Monique Olivier
Attorneys for Plaintiff and the Class

---

[†]  Plaintiff has moved separately for an award of attorneys' fees and costs (Dkt. 59, 59-1, 59-2, 59-3, 59-4, 59-5, and 59-6), said motion also to be heard on October 14, 2014.

1
2

# **TABLE OF CONTENTS**

**Page(s)**

3

I.    INTRODUCTION ........................................................................................1

4

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................1

5

       A.    Negotiations and Settlement .....................................................2

6

       B.    Preliminary Approval of Settlement and Class Certification ...................3

7

       C.    Settlement Fund ....................................................................4

8

       D.    Plan of Distribution to Class Members..........................................4

9

       E.    Release of Claims ...................................................................5

10

       F.    Settlement Administration ........................................................5

11

              1.    No Class Member Objections ...........................................5

12

III.  ARGUMENT ............................................................................................6

13

       A.    The Notice Was the Best Practicable Notice. .................................6

14

       B.    The Settlement Merits Final Approval. .........................................7

15
16

              1.    The Strength of Plaintiff's Case Favors Approval.....................8

17

              2.    The Risk, Expense, Complexity, and Likely Duration of Further
                    Litigation Favors Final Approval.......................................9

18

19

              3.    The Value of the Settlement Favors Final Approval. ...............10

20

              4.    The Extent of Discovery Completed and the Stage of Proceedings
                    Weigh in Favor of Final Approval.....................................12

21

22

              5.    The Recommendation of Experienced Counsel Favors Approval.............13

23

              6.    No Government Entity Is Involved in the Settlement................13

24

              7.    The Class Members' Positive Reaction Supports Final Approval.............14

25

       C.    The PAGA Penalty Portion of the Settlement Merits Approval.........................14

26

       D.    The Settlement Class Meets the Rule 23 Class Certification Requirements. ........15

27

              1.    The Class Is Sufficiently Numerous. .................................15

28

              2.    Questions of Law and Fact Are Common to the Class..............................15

i

1

3.     Plaintiff's Claims Are Typical of Class Members' Claims ......................16

4.     Plaintiff And Class Counsel Will Fairly and Adequately Represent the Class. ...................................................................................................16

5.     Rule 23(b)(3) Requirements for Class Certification Are Satisfied. ...........17

E.     The Requested Attorneys' Fees and Expenses Are Fair and Reasonable and Should Be Approved. ..............................................................................18

F.     The Class Representative Incentive Award Is Fair and Reasonable and Should be Approved. ..............................................................................19

G.     The Class Administration Costs Are Reasonable and Should Be Approved.........21

IV.   CONCLUSION.............................................................................................................22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................15, 17, 18

5

*Barnes v. The Equinox Grp., Inc.*,
2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ............................................................11

6

7

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ..................................................................................14

8

9

*Churchill Village, LLC v. GE*,
361 F.3d 566 (9th Cir. 2004) ................................................................................6, 14

10

*In re Connecticut General Life Ins. Co.*,
1997 WL 910387 (C.D. Cal. Feb. 13, 1997)................................................................20

11

12

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ..................................................................................20

13

14

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 7863877 (N.D. Cal. Oct. 22, 2008)............................................................20

15

*Dornberger v. Metropolitan Life Ins. Co.*,
203 F.R.D 118 (S.D.N.Y. 2001) ...............................................................................19

16

17

*In re Dun & Bradstreet Credit Serv. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) .............................................................................20

18

19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).....................................................................................................6

20

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) .............................................................................20

21

22

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
700 F.Supp. 208 (S.D.N.Y. 1988)............................................................................20

23

24

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... *passim*

25

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977) .............................................................................13, 14

26

27

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007).......................................................................................20

28

iii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AND FINAL APPROVAL;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO.  13-CV-01199-YGR

*In re Mega Fin'l Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................12, 16

*In Re Mercury Interactive Corp. Sec. Litigation*,
   618 F.3d 988 (9th Cir. 2010) ...................................................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).....................................................................................................6

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ *passim*

*Navarro v. Servisair*,
   2010 WL 1729538 (N.D. Cal. 2010) .......................................................................19

*Officers for Justice v. Civil Serv. Comm.'s*
   668 F.2d 615 (9th Cir. 1982) ..........................................................................7, 8, 13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).....................................................................................................6

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .................................................................................15

*Rodriguez v. West Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................19

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) .....................................................................................6

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................................19

*In re Syncor Erisa Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ...................................................................................7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .......................................................................................8

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
   *Sales Practices, & Products Liab. Litig.*,
   2013 WL 3224585 (C.D. Cal. June 17, 2013) ...........................................................8

*Van Vranken v. Atlantic Richfield Co.*,
   901 F.Supp. 294 (N.D. Cal. 1995).....................................................................19, 20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .............................................................15

*Walter v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) .................................................................................16

*Wang v. Chinese Daily News, Inc.*,
709 F.3d 829 (9th Cir. 2013) ............................................................................15

*In re Wash. Public Power Supply System Sec. Ltig.*
720 F.Supp.1379 (D. Ariz. 1989) ......................................................................13

*Williams v. Centerplate, Inc.*,
2013 WL 4525428, at *4 (S.D. Cal. Aug. 26, 2013) .........................................11

*Wren v. RGIS Inventory Specialists LLC*,
2011 WL 1230826 (N.D. Cal. April 1, 2011)....................................................12

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001) ...........................................................................18

**Statutes, Rules and Regulations**

Class Action Fairness Act of 2005..............................................................................14

California Civil Code
Section 1542.........................................................................................................5

California Labor Code
Section 2699........................................................................................................14
Section 2699(l).....................................................................................................14

California Labor Code
Private Attorney General Act of 2004 ........................................................ *passim*

Federal Rule of Civil Procedure
Rule 12(e)(2) .........................................................................................................8
Rule 23 ................................................................................................................15
Rule 23(a)..............................................................................................................3
Rule 23(a)(1)........................................................................................................15
Rule 23(a)(2)........................................................................................................15
Rule 23(a)(3)........................................................................................................16
Rule 23(a)(4)........................................................................................................16
Rule 23(b)(3).................................................................................................3, 9, 17
Rule 23(b)(3)(D).................................................................................................18
Rule 23(c)(2)..........................................................................................................6
Rule 23(e)..........................................................................................................1, 7

**Other Authorities**

Manual for Complex Litigation – Fourth (4th Ed. 2004)
§ 21.6....................................................................................................................7

v

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AND FINAL APPROVAL;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO.  13-CV-01199-YGR

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.**     <u>**INTRODUCTION**</u>

3         Plaintiff moves this Court for final approval of the class settlement which it preliminarily

4    approved by the Order dated July 22, 2014.  (Dkt. 58.)  Since that time, the Class Notice has been

5    sent to 1,136 Class Members.  Only three Class Members have sought exclusion and no Class

6    Member has filed an objection.  Accordingly, the settlement class has responded very favorably to

7    the proposed settlement.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 529

8    (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed

9    class action settlement raises a strong presumption that the terms of a proposed class settlement

10   action are favorable to the class members.").[1]

11        Class Members stand to recover significant monetary benefits under the settlement of

12   $1,415,444, including 100% of the value of all unpaid overtime worked over eight hours in a day

13   as a result of uncompensated shift swaps, the central claim in this case.  This non-reversionary and

14   non-claims made settlement provides an average settlement distribution of $898, with many class

15   members receiving several thousand dollars.  The average settlement amount represents over 50

16   hours of straight-time wages at Plaintiff and Class Representative Andrew Bell's hourly rate.

17   Class Members need not take any affirmative steps to receive the benefit of the Settlement: absent

18   excluding themselves from the Settlement, they will receive a distribution check with their pro rata

19   share of the Settlement in approximately January 2015.

20        The Settlement is therefore "fair, reasonable, and adequate" within the meaning of

21   Rule 23(e) and should be finally approved.

22   **II.**    <u>**FACTUAL AND PROCEDURAL BACKGROUND**[2]</u>

23

24        [1] The Parties alerted the Court via stipulation on September 24, 2014 of the fact that six additional class members have recently been identified by Defendant, and notice to these six

25   members must now be given.  The Parties are submitting a revised stipulation and proposed order currently herewith addressing the process for the six additional class members.

26        [2] In compliance with this Court's Procedural Guidance for Class Actions, Plaintiff

27   summarizes the background facts and case history in support of this Motion and incorporates by reference herein the complete background facts set forth in the Motion for Award of Attorneys'

28   Fees and Expenses, filed on August 29, 2014 (Dkt. 59 through 59-6.)

1    Plaintiff Andrew Bell filed the Complaint initiating this action on March 18, 2013, on

2  behalf of himself and a class of individuals who were employed by Delta Air Lines, Inc. ("Delta")

3  as "Ready Reserve" employees throughout California during the period from March 18, 2009 to

4  March 17, 2014.  (Dkt. 1.)[3]  Plaintiff alleges that Delta: failed to pay overtime to its Ready Reserve

5  employees in California; did not pay these employees wages for off-the-clock work; did not

6  authorize or permit these employees to take meal or rest breaks; did not provide these employees

7  with their wages in a timely manner; and, did not provide these employees with accurate wage

8  statements in violation of California law.  (Dkt. 6.)

9    The parties exchanged initial disclosures, propounded and responded to interrogatories, and

10 document requests, and took the depositions of Plaintiff and key Delta managerial employees.

11 (Declaration of Monique Olivier In Support of Motion for Final Approval of Class Settlement,

12 ("Olivier Decl.") ¶ 4.)

13   After Delta objected to producing, *inter alia*, Class Member contact data, clock-in/-out

14 records, and wage statements, Plaintiff initiated a lengthy but unsuccessful meet-and-confer effort.

15 (Olivier Decl. ¶ 5.)  Plaintiff moved to compel responses from Delta in February 2014.  (Dkt. 29.)

16 Following a hearing of the matter on March 6, 2014, Magistrate Judge Laurel Beeler ordered that

17 Delta produce essentially all the material Plaintiff requested (subject to a protective order and other

18 measures to protect Class Member confidentiality).  (Dkt. 40.)  On March 14, 2014, Delta

19 produced data containing detailed payroll, work hour, and wage information of Class Members.

20   **A.    Negotiations and Settlement**

21   On March 17, 2014, the Parties mediated for over twelve hours before Jeff Ross, Esq., and

22 reached a settlement, resulting in a Memorandum of Understanding reflecting the essential terms

23 of the settlement.  (Dkt. 50-6; Olivier Decl. ¶¶ 7-8.)  The Parties filed a Joint Notice of Class

24 Action Settlement on March 19, 2014.  (Dkt. 41.)  Under the terms of the Memorandum of

25 Understanding, Delta provided Class Member data establishing the settlement sums, which

26

27   [3]  Plaintiff filed a First Amended Complaint on April 22, 2013, which Delta answered.
28 (Dkt. 6, 14.)

1  Plaintiff's experts' analyzed, and the Parties continued to negotiate the specific terms of the

2  settlement.  (Dkt. 59-1 ¶¶ 16-17.)  Following analyses by the Parties' experts and further

3  negotiation, the total settlement sum to the Class increased by $65,444 under the terms of the

4  Stipulation of Settlement.  (*Id.*; Dkt. 50-3.)

5          Under the Stipulation of Settlement, the Class will settle all of the claims in the litigation in

6  exchange for a Gross Settlement Amount of $1,415,444.  This settlement will not require class

7  members to file claims and does not include any reversionary interest to Delta.  The Gross

8  Settlement Amount includes payments to Class Members, a Service Payment to the Class

9  Representative, and payment to the LWDA in the amount of $7,500 for PAGA penalties.  Delta

10  has agreed to pay Class Counsel's fees awarded by this Court in an amount not to exceed $353,861

11  (25% of the Gross Settlement Amount).  Delta has further agreed to pay Class Counsel's costs as

12  approved by the Court from the Gross Settlement Amount.

13      **B.      Preliminary Approval of Settlement and Class Certification**

14          On July 22, 2014, the Court issued the Order on Plaintiff's Motion for Preliminary

15  Approval of Class Action Settlement, Approval of Class Notice, and Class Certification.

16  (Dkt. 58.)  In the Order, the Court:

17      1)  Granted preliminary approval of the Stipulation of Settlement, finding the Settlement "fair, adequate, and reasonable to the Class;"

18      2)  Determined that the requirements of Rule 23(a) and (b)(3) for class certification were
19          satisfied for settlement  purposes and certified the Action as a class action for settlement purposes;

20      3)  Appointed Plaintiff as Class Representative and Duckworth Peters Lebowitz Olivier LLP
21          and the Law Offices of Deborah C. England as Class Counsel;

        4)  Approved the revised proposed Notice of Class Action Settlement;

22      5)  Appointed Dahl Administration as the Settlement Administrator and preliminarily
23          approved Settlement Administration costs not to exceed $20,000 to be paid out of the Gross Settlement Amount; and,

24      6)  Established a schedule for further proceedings, including Delta's provision of a Class
25          Member Database to the Settlement Administrator, the mailing of the Notices of Class
            Action Settlement to the Class Members by the Settlement Administrator, the
26          establishment by the Settlement Administrator of a settlement website, the 45-day period
            for Class Members to either opt out of the Settlement or file an objection to the Settlement,
27          biweekly status reports from the Settlement Administrator to Class Counsel and
            Defendant's counsel and the Settlement Administrator's declaration of due diligence, the
28          deadline for Class Counsel to file the Motion for Attorneys' Fees and Costs and the Motion
            for Final Approval, and the date of the hearing of said motions.

3

## C.     Settlement Fund

The Court preliminarily approved the terms of the Stipulation of Settlement that provide for the creation of a non-reversionary Gross Settlement Amount of $1,415,444.  Under the preliminarily approved settlement terms, Class Members will receive payments from the Gross Settlement Amount less the payment to the LWDA of the aforementioned PAGA penalties, any fee and cost award to Class Counsel, any service payment to the Class Representative, and Settlement Administrator costs—the remainder being the "Net Settlement Amount."  (Dkt. 58; Stipulation of Settlement, Dkt. 50-3 ¶ 5.)  In addition, under the terms of the Stipulation of Settlement, Delta will pay the employer's share of all state and federal payroll taxes imposed by applicable law. (Dkt. 50-3 ¶ 5.7.5.)

If the Court grants the Service Payment and Settlement Administrator costs detailed herein, and grants Plaintiff's Motion for Attorneys' Fees and Expenses, the Net Settlement Amount will be no less than $1,017,640.  (Olivier Decl. ¶ 9.)[4]  With 1,133 individuals participating in the Settlement, the average amount of recovery per class member is $898.  (*Id.* ¶ 20.)

## D.     Plan of Distribution to Class Members

In order to receive payments out of the Net Settlement Amount, Class Members are not required to submit claims or take any other affirmative action.  (Dkt. 50-3 ¶ 6.2.2.) Upon Final Approval of the settlement, each Class Member will be eligible to receive a Settlement Payment representing a share of the Net Settlement Amount (Dkt. 50-3 ¶ 2.37), to be distributed pursuant to the Settlement Agreement as follows:

1)  **Actual unpaid overtime:**  Each Class Member who worked over eight hours on any workday as a result of a shift swap will receive 100% of the unpaid overtime reflected in Delta's records;

2)  **Waiting time penalties:**  Each Class Member no longer employed by Delta as of March 17, 2014, who worked over eight hours on any workday as a result of a shift swap will receive, in addition to actual unpaid overtime, $618 as a waiting time penalty;

3)  **Remaining Net Settlement Amount:**  The Net Settlement Amount remaining after distribution pursuant to subsections (1) and (2) above will be divided among all Class Members *pro rata* based on the ratio of the number of weeks worked by each Class

---

[4]  In Plaintiff's Motion for Preliminary Approval, the Net Settlement Amount was stated as $991,583.  Because Class Counsel's costs and class administration costs are less than was anticipated, the Net Settlement Amount is the higher figure of $1,017,640.  (Olivier Decl. ¶ 9.)

1

Member to the total number of weeks worked by all Class Members; and,

2

3

4) **Payments not cashed:** Payments sent to Class Members that are not cashed within 180 days of issuance shall be void. These amounts will go into a pool of funds to be divided *pro rata* among all Class Members who previously cashed their payments (unless the Parties agree that the amount is too small to redistribute, in which case it will be paid as a *cy pres* award to an organization designated by Plaintiff with the approval of Defendant, which approval shall not be unreasonably withheld).

4

5

(Dkt. 50-3 ¶ 5.7.1.)

6

7

Class Counsel estimate that the average Settlement Payment to Class Members will be

8

$898 and many Class Members will receive Settlement Payments of several thousand dollars.

9

(Olivier Decl. ¶ 20.)

10

**E.     Release of Claims**

11

Under the terms of the Stipulation of Settlement, the Settlement Class will release Delta

12

from all settled claims arising from the facts asserted in the First Amended Complaint and as

13

defined in the Stipulation of Settlement, and will provide a waiver pursuant to California Civil

14

Code § 1542 solely with respect to the Settled Claims. (Dkt. 50-3 ¶ 2.32.)

15

**F.     Settlement Administration**

16

On August 11, 2014, the Court-approved Class Administrator, Dahl Administration, Inc.

17

("Dahl") mailed the Class Notice to 1,136 Class Members. (Declaration of Sean Combs ISO

18

Motion for Final Approval ("Combs Decl.") ¶¶ 4-6.) That same day, Dahl also activated a website

19

(www.DeltaWagesSettlement.com) which includes a link to the Stipulation of Settlement and a

20

summary of the settlement terms and an email address to be contacted for more information. (*Id.*

21

¶¶ 9-10)

22

Class Members who wished to opt out of the settlement were required to submit written

23

and signed requests for exclusion within 45 days of the date that the Notices were mailed.

24

(Dkt. 58.) As of September 25, 2014, the 45th day after the mailing date of the Notices, the

25

Settlement Administrator received just three requests for exclusion. (Combs Decl. ¶ 12.) The

26

three opt outs of a class of 1,136 represents an opt-out rate of less than three-tenths of one percent.

27

**1.     No Class Member Objections**

28

Class Members who did not opt out but who wished to object to the settlement were

1  required to send a letter objecting to the settlement to the Clerk of the Court within 45 days of the

2  date that the Notices were mailed.  (Exhibit A to Preliminary Approval Order, Dkt. 58.) As of

3  September 25, 2014, no Class Member had submitted an objection.  (Olivier Decl. ¶ 12.)

4  **III.   ARGUMENT**

5      **A.   The Notice Was the Best Practicable Notice.**

6        Federal Rule of Civil Procedure 23(c)(2) requires that the class members receive "the best

7  notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2); *see also*, *Phillips Petroleum*

8  *Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75

9  (1974); *Churchill Village, LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  Procedural due process

10  requires that affected parties have the right to be heard at a meaningful time and in a meaningful

11  manner.  It does not guarantee any particular procedure but instead requires only notice reasonably

12  calculated "to apprise interested parties of the pendency of the action and afford them an

13  opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

14  306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  "Notice is satisfactory if it

15  'generally describes the terms of the settlement in sufficient detail to alert those with adverse

16  viewpoints to investigate and to come forward and be heard.'"  *Churchill Village*, 361 F.3d at 575.

17        On July 22, 2014, the Court approved the Class Notice and notice procedure and authorized

18  its distribution to the Class.  (Dkt. 50-3 ¶ 6.2.3; Dkt. 58.)  Pursuant to that Order and the terms of

19  the Settlement Agreement, on August 7, 2014, Delta provided to Dahl a database file of 1,138

20  records for persons identified as Class Members which included each Class Member's name, last

21  known address, and social security number.  (Combs Decl. ¶ 4.)[5]  In order to obtain the most

22  current mailing address for Class Members, Dahl processed the Class List addresses through the

23  National Change of Address ("NCOA") database maintained by the United States Postal Service

24  ("USPS").  This process updates addresses for individuals who have moved within the last four

25  years and who filed a change of address card with the USPS.  (*Id.* ¶ 5.)  On August 11, 2014, the

27      [5] Two of these records were found to be duplicates, so the actual number of class members

28  to whom notice was mailed is 1,136.  (Combs Decl. ¶ 4.)

1    Class Notice was mailed via USPS first class mail to 1,136 Class Member with an objection and

2    request for exclusion deadline of September 25, 2014 (postmark).  (*Id.* ¶ 6.)  Any undeliverable

3    mail was returned to Dahl.  Ultimately, only 11 out of 1,136 Notices were undeliverable, a 99%

4    success rate.  (*Id.* ¶¶ 7-8.)

5        In addition, Dahl established a settlement website ([www.DeltaWagesSettlement.com](www.DeltaWagesSettlement.com))

6    designed to assist Class Members seeking additional information about the proposed settlement.

7    The website was implemented on August 11, 2014 and is still operating.  (Combs Decl. ¶ 10.)

8    Dahl also established a settlement email address to assist Class Members seeking information

9    about the proposed settlement (DeltaWagesSettlement@DahlAdministration.com).  (*Id.* ¶ 11.)

10       The Notice approved by the Court at the preliminary approval stage was the best notice

11    practicable under the circumstances and fairly apprised Class Members of the proposed settlement

12    terms and their options.

13       **B.**    **The Settlement Merits Final Approval.**

14       Under Federal Rule of Civil Procedure 23(e), the central issue on a motion for final

15    approval of a class action settlement is whether the settlement is "fair, adequate, and reasonable."

16    *Officers for Justice v. Civil Serv. Comm.'s* 668 F.2d 615,625 (9th Cir. 1982).  The Court's task is

17    to ensure "that the agreement is not the product of fraud or overreaching by, or collusion between,

18    the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate

19    to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  The issue is

20    not whether settlement could have been better in some fashion, but whether it is fair.  "Settlement

21    is the offspring of compromise; the question we address is not whether the final product could be

22    prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Id.*; *see*

23    Manual for Complex Litigation, Fourth (4th Ed. 2004) § 21.6 at 309 (settlement is fair, adequate,

24    and reasonable when "the interests of the class are better served by the settlement than by further

25    litigation.").  There is "a strong judicial policy" that favors settlements, "particularly where

26    complex class action litigation is concerned."  *In re Syncor Erisa Litig., 516 F.3d 1095, 1101 (9th

27    Cir. 2008).

28       While there is no "exhaustive list," the Ninth Circuit has directed that the following factors

1  be considered to determine whether a class action settlement is fair, adequate, and reasonable: (1)

2  the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

3  litigation, (3) the risk of maintaining class action status throughout trial; (4) the amount offered in

4  settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

5  experience and views of counsel; (7) the presence of a government participant; and (8) the reaction

6  of class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026; *Torrisi v. Tucson Elec.*

7  *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  These factors are not exclusive; one may deserve

8  more weight than the others depending on the circumstances.  *Officers for Justice*, 688 F.2d at 625.

9  In some instances, "one factor alone may prove determinative in finding sufficient grounds for

10  court approval."  *See Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 525-26

11  (C.D. Cal. 2004) (citing *Torrisi*, 8 F.3d at 1376).  The settlement taken as a whole must be

12  reviewed for its overall fairness.  *Hanlon*, 150 F.3d at 1026.

13        Here, each of the relevant factors supports final approval of the settlement.  The Court

14  should now confirm its preliminary finding that the proposed settlement is "fair, reasonable, and

15  adequate."  (Dkt. 58; Fed. R. Civ. P. 12(e)(2).)

16                **1.**      **The Strength of Plaintiff's Case Favors Approval.**

17        In assessing this factor, courts evaluate the likelihood of success on the merits and the

18  range of possible recoveries.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

19  *Practices, & Products Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 3224585, at *7

20  (C.D. Cal. June 17, 2013).  Courts should not attempt to "reach any ultimate conclusions on the

21  contested issues of fact and law," nor should the settlement be "judged against a hypothetical or

22  speculative measure of what might have been achieved by the negotiators."  *Officers for Justice*,

23  688 F.2d at 625.

24        Plaintiff's claims are strong.  He alleges that Delta has failed to pay overtime and all wages

25  in a timely manner to its Ready Reserve employees in California.  He also alleges that Delta failed

26  to provide meal and rest breaks and failed to provide accurate wage statements.  (Dkt. 6.)  Finally,

27  Plaintiff's claims lead to derivative waiting time penalties and civil penalties under PAGA.  (*Id.*)

28  All of Plaintiff's claims are based on policies and practices that appear to be applicable to all class

1 members.

2       While the merits of this action are sound, the outcome, in the absence of settlement, is

3 uncertain.  Each of these claims had hurdles to overcome, as discussed in more detail in subsection

4 (2) below. The risks of litigation are real and substantial, including class certification risks and

5 some particularly significant risks of non-recovery or greatly reduced recoveries relative to what

6 the Class has been seeking.

7       Even in the face of these obstacles, Plaintiff was able to settle the case on a class basis for

8 100% of all overtime worked over eight hours in day for any shift swap for which Class Members

9 were not compensated, which was the central claim in the case.  (Olivier Decl. ¶ 21.)  In addition,

10 the Settlement provides substantial additional compensation for the other claims, the waiting time

11 penalties and the PAGA penalties.  (Olivier Decl. ¶ 21.)  The settlement is within the range of

12 possible recoveries.  This factor, therefore, weighs in factor of final approval.

13              **2.      The Risk, Expense, Complexity, and Likely Duration of Further**
              **Litigation Favors Final Approval.**
14

15       The central factor of the "risk, expense, complexity, and likely duration" prong is the

16 expense of litigation.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D.

17 Cal. 2004).  "In most situations, unless the settlement is clearly inadequate, its acceptance and

18 approval are preferable to lengthy and expensive litigation with uncertain results."  *Id.*

19       The Complaint was filed in this Court on March 18, 2013, naming eight (8) causes of

20 action.  At the time that this Settlement had been reached, class certification had not yet been

21 heard.  Assuming Plaintiff prevailed and certified a Fed. R. Civ. P. 23(b)(3) class action, the

22 expected course of litigation would take this case through significant additional discovery, use of

23 experts, and dispositive motions including possible cross-motions for summary judgment and a

24 possible motion by Defendant for decertification.  Experience in class action cases dictates that

25 such events would take over a year.

26       Although Plaintiff's claims are strong, he nevertheless would face significant obstacles to

27 recover for himself and the Class.  The Court has not yet certified the class.  Delta mounted a

28 substantial defense to class discovery; it would mount an even more vigorous opposition to class

1  certification, as Delta maintains that Plaintiff cannot demonstrate predominance of common issues

2  as to the overtime and breaks claims.  (*See, e.g.*, Dkt. 14, 29, 31.)  In addition, Delta has raised

3  several legal defenses to Plaintiff's claims that would have to be litigated, including an argument

4  that all of Plaintiff's claims are preempted by federal law.  *(Id.*; Olivier Decl. ¶¶ 17-18.)

5       Assuming the case moves forward with a trial, considering the further expenditure of time

6  in preparation, both Parties will undoubtedly incur hundreds of thousands of dollars in costs and

7  fees on further depositions, class-wide notice, pre-trial briefing, and subsequent appeals.  On the

8  other hand, if the Court either denied class certification or later decertified it, the Class would

9  recover nothing.  At a minimum, Plaintiff and the putative class would be obligated to litigate this

10  case for many more months if not years before resolution.  Indeed, some of the legal issues in this

11  case could lead to appeals, which would delay resolution a minimum of an additional 18 months

12  from any appealable judgment or order.  (Dkt. 59-1 ¶¶ 10, 23-24.)

13       The risks inherent in further litigation in this action therefore include, at a minimum: (1)

14  whether the Court will grant class certification; (2) whether Plaintiff will establish Delta's liability

15  to Plaintiff and the Class; (3) the expense of further discovery, motion practice and potentially

16  trial; and (4) the potential delay in providing monetary relief to the Class as a result of the

17  continued litigation and the likelihood of appeals and cross-appeals.  Plaintiff and Delta thus

18  patently face the *certainty* that further litigation would be expensive, complex, and time

19  consuming.

20       The substantial benefits obtained by this Settlement far outweigh the expense and delay

21  which would inevitably result from continued litigation of this action.  Settlement also avoids all

22  possible risks that these Class Members will be left uncompensated.  Thus, this factor weighs in

23  favor of final approval of the Settlement.

24          **3.**     **The Value of the Settlement Favors Final Approval.**

25       Particularly in light of the risks articulated above, the Settlement in this case provides

26  outstanding results for class members.  Under the Settlement, Delta has agreed to create a fund of

27  $1,415,444 for 1,136 Class Members.  In addition, Delta will pay the employer's share of

28  applicable payroll taxes on payments to Class Members. The Net Settlement Amount to be

10

1   distributed to Class Members will be at least $1,017, 640 after costs of distribution, the service

2   award and attorneys' fees.  (Olivier Decl. ¶¶ 9, 22.)  The average settlement amount per class

3   member is $898.  At Plaintiff's hourly rate of $15.13, the average settlement amount equals 59.28

4   hours of straight-time wages.  Thus, the amount of potential recovery for Class Members is

5   significant.  In fact, many class members will receive settlement payments of several thousand

6   dollars each.  (Olivier Decl. ¶¶ 20-23.)

7          The distribution structure of the Settlement Fund guarantees that Participating Class

8   Members will receive 100% of the value of their overtime claims due to voluntary shift swaps.

9   Participating Class Members who are no longer employed will receive an additional payment of

10  $618 each in settlement of their waiting time penalty claims, which represents approximately 25%

11  of the value of the waiting time penalties (estimating that the average Ready Reserve employee

12  worked a daily 5 hour shift at a pay rate of $15 per hour).  (*Id.*)  Participating Class Members will

13  receive a share of the Net Settlement Amount remaining, which is estimated to be over $550,000,

14  distributed pro rata based upon the number of weeks they worked, in settlement of their remaining

15  meal and rest break claims.  (*Id.*)  The individual distributions vary depending on the amount of

16  overtime worked, the total number of weeks they worked during the class period, and whether they

17  are current or former employees.  Thus each Class Member's recovery is fair, as it is structured in

18  a way that ensures that each class member's individual settlement amount is tailored to the length

19  of her employment relative to the other class members during the class period; accordingly, the

20  distribution is weighted in favor of those class members who were most affected by the alleged

21  violations.  (*Id.*)  Moreover, based on the size of the claims, it is unlikely that the individual class

22  members would have prevailed without the class-action mechanism.  (*Id.* ¶ 24.)

23         Class members are not required to take any affirmative steps to receive their share of the

24  Settlement.  (Dkt. 50-3 ¶ 6.2.2.)  Class Members should receive their payments in January 2015, as

25  opposed to waiting for years to recover any compensation, assuming they recovered anything at

26  all.  Additionally, none of the funds will revert to Delta.  (Dkt. 50-6 ¶ 1.)

27         The average awards provided herein compare favorably with average awards in similar

28  wage and hour class action settlements.  *See, e.g.*, *Williams v. Centerplate, Inc.,* No. 11-CV-2159

H-KSC, 2013 WL 4525428, at *4 (S.D. Cal. Aug. 26, 2013) (providing average award of $108 in wage and hour class settlement involving claims for missed meal and rest periods, unpaid straight-time and overtime, and failure to reimburse for uniform and equipment expenses); *Barnes v. The Equinox Grp., Inc.*, No. C 10-3586 LB, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 2013) (providing average award of $146.53 and maximum award of $719.02 in wage and hour class settlement involving claims for unpaid straight-time and overtime and failure to reimburse expenses); *Wren v. RGIS Inventory Specialists LLC*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. April 1, 2011) (providing average award of $207.69 in in wage and hour class settlement involving claims for unpaid straight-time and overtime).

The monetary relief achieved through the Settlement represents an excellent result for Class Members.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The value of the settlement thus strongly favors final approval.

**4.      The Extent of Discovery Completed and the Stage of Proceedings Weigh in Favor of Final Approval.**

Here, the parties exchanged initial disclosures, propounded and responded to interrogatories, document requests, and took the depositions of Plaintiff and key Delta managerial employees.  (Olivier Decl. ¶¶ 4-5.)  Plaintiff further pursued Delta records that included Class Member contact data, clock-in/-out records, wage statements, as well as detailed payroll, work hour, and wage information of Class Members, which Delta eventually produced after objections and a court order.  (Dkt. 40.)  The parties exchanged thousands of pages of documents, negotiated a stipulated protective order, and took depositions of key witnesses, employees, and parties from each side.  (Olivier Decl. ¶¶ 4-5.)  Through the course of discovery, Delta also produced detailed payroll and wage data which permitted Plaintiff and Class Counsel to evaluate the size of the Class, the damages to the Class, and the range of possible recoveries.  (Olivier Decl. ¶¶ 4-5, 8.)

The discovery in this case, supported by the documentation produced by both sides, yielded valuable information in terms of class certification issues, liability, and the amount of damages in controversy, all of which helped move the parties closer to settlement.  The Parties were sufficiently aware of the facts, evidence, issues, and circumstances of this litigation to make an

informed decision about this settlement.  Thus, this settlement reflects serious, intensive, and arm's length negotiation efforts and the parties' mutual understanding of a fair, adequate, and reasonable resolution as supported by the facts and evidence brought forth in discovery.  This factor weighs in favor of final approval.

**5.**     **The Recommendation of Experienced Counsel Favors Approval.**

The judgment of experienced counsel regarding the settlement is entitled to significant weight.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026.  The recommendation of experienced counsel is afforded "'great weight' [because they] are the most closely acquainted with the facts of the underlying litigation," and their previous experience in such cases provides a foundation for sound judgment on the fairness of the settlement.  *In re Wash. Public Power Supply System Sec. Ltig*., (D. Ariz. 1989) 720 F.Supp.1379, 1392 (*citing Officers for Justice*, 688 F.2d at 625).  "Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"  *Nat'l Rural Telecom.,* 221 F.R.D. at 528 (citations omitted); *see also Officers for Justice*, 688 F.2d at 625 (a court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties.").

Here, Class Counsel believes this Settlement to be an excellent result for the Class Members.  (Olivier Decl. ¶¶ 14-25; Dkt. 59-1 ¶¶ 19-24.)  This action has been litigated and settled by counsel experienced and competent in class actions, complex litigation and wage and hour matters.  (Dkt. 59-1 ¶¶ 5-6; Dkt. 59-2, Ex. A; Dkt. 59-5 ¶¶ 4-5.)  They have conducted an extensive investigation in to the factual and legal issues raised in this action, engaged in thorough discovery and data analysis, and engaged in arms' length negotiations.  (Olivier Decl. ¶¶ 14-19; Dkt. 59-2 ¶¶ 2-3, 6-7.)  Moreover, the key terms of the Settlement were recommended by Jeff Ross, a mediator with expertise in settling wage and hour class cases.  (Olivier Decl. ¶ 7.)

The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of approval.

**6.**     **No Government Entity Is Involved in the Settlement.**

13

1   The participation of a governmental entity "serves to protect the interest of the class

2   members." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).  This settlement

3   does not involve a government entity.  On March 18, 2013, Plaintiff informed the California Labor

4   and Workforce Development Agency ("LWDA") of his intent to seek penalties pursuant to the

5   Private Attorney General Act of 2004 ("PAGA").  (Dkt. 6.)  The LWDA did not respond to this

6   notice and has not taken any action to investigate Plaintiff's claims.  In addition, Delta provided

7   the notices required under CAFA to the appropriate government enforcement offices.  (Olivier

8   Decl. ¶ 7)  This factor, therefore, is neutral.

9            **7.        The Class Members' Positive Reaction Supports Final Approval.**

10   The reaction of class members to a proposed settlement is an important factor in

11   determining whether the settlement is fair, adequate, and reasonable.  *City of Seattle*, 955 F.2d at

12   1291-1296.  A court may infer that a class action settlement is fair, adequate, and reasonable when

13   few class members object to it.  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir.

14   1977); *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (upholding

15   district court's approval of class settlement with 45 objections and 500 opt-outs from a class of

16   150,000).  The "absence of a large number of objections to a proposed class action settlement

17   raises a strong presumption that the terms of a proposed class settlement action are favorable to the

18   class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

19   Here, the Class Members' reaction to the proposed Settlement supports this Court granting

20   final approval.  As of September 25, 2014, the 45th day after the mailing date of the Notices, the

21   Settlement Administrator received just three requests for exclusion.  (Combs Decl. ¶ 12.)  This

22   represents an opt-out rate of less than three-tenths of one percent.  As of September 25, 2014, no

23   Class Member had submitted an objection.  (Olivier Decl. ¶ 12.)

24   Accordingly, consideration of this factor weighs in favor of finally approving the

25   Settlement.

26            **C.        The PAGA Penalty Portion of the Settlement Merits Approval.**

27   Pursuant to California Labor Code section 2699(l), the Court must review and approve the

28   settlement of penalties sought under that Labor Code section. Cal. Lab. Code § 2699(l).  For all of

14

1   the reasons stated above, the Settlement is fair, reasonable, and adequate, and should be approved.

2   As part of the Settlement, Defendant has agreed to pay $10,000 to settle the Labor Code § 2699

3   claim, of which the substantial payment of $7,500 will go to the California Labor and Workforce

4   Development Agency.  (Olivier Decl, Ex. 1.)  This portion of the Settlement should be approved.

5               **D.       The Settlement Class Meets the Rule 23 Class Certification Requirements.**

6               In the preliminary approval order, the Court conditionally held that, for settlement purposes

7   the Settlement Class satisfies the class certification criteria of Rule 23.  (Dkt. 58.)  For the reasons

8   discussed below, the certification of the Settlement Class for settlement purposes should be

9   confirmed in a final approval order.

10                        **1.       The Class Is Sufficiently Numerous.**

11              The class must be so numerous that joinder of all members individually is impracticable.

12   Fed. R. Civ. P. 23(a)(1).  Here, 1,136 current and former hourly employees were identified from

13   Delta's records as being employed in California during the Class Period.  Three Class Members

14   have opted out of the Class, leaving the total number of class members at 1,133.  This makes the

15   class sufficiently numerous.

16                        **2.       Questions of Law and Fact Are Common to the Class**

17              For certification, Plaintiff must show one or more questions of law or fact common to the

18   class.  Under the "permissive" and "flexible" standard for commonality under Rule 23(a)(2), either

19   "shared legal issues or a common core of facts" suffices. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122

20   (9th Cir. 2010).  As the Supreme Court has noted, "even a single [common] question will do."

21   *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  In the wage and

22   hour context, a plaintiff may demonstrate commonality by presenting significant proof that the

23   defendant "operated under a general policy of violating California labor laws."  *Wang v. Chinese*

24   *Daily News, Inc.*, 709 F.3d 829, 834 (9th Cir. 2013) (quoting *Wal-Mart*, 131 S. Ct. at 2553

25   (parentheses omitted)).  Moreover, because class certification in this case is for settlement

26   purposes only, the court need not consider whether certification would present management

27   problems at trial.  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("Confronted with a

28

15

request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Here, all Class Members' claims derive from a common set of factual circumstances. Plaintiff alleges that during the Class Period and consistent with Delta policies and practices, Delta:

- did not pay overtime pay to Class Members who worked over eight hours in a single day as a result of voluntary shift (Dkt. 6 ¶26);
- denied meal and rest breaks to Class Members (*id.* ¶¶22, 24);
- deducted 30-minutes of pay from Class Member shifts, despite denial of meal and rest breaks (*id.* ¶23);
- failed to make timely bimonthly payments of wages to Class Members (*id.* ¶¶ 68, 75);
- required Class Members to work "off-the-clock" (*id.* ¶25);
- provided inaccurate and incomplete wage statements to Class Members (*id.* ¶27)

Each of these policies and practices applied to all Class Members (*id.* ¶¶ 28-29), satisfying the commonality requirement.

### 3.   <u>Plaintiff's Claims Are Typical of Class Members' Claims</u>

The claims or defenses of the representative parties must be typical of those of the class. Fed. R. Civ. P. 23(a)(3).  "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020 (citation omitted).

Here, Plaintiff's claims are same as those of the Class and there are no significant differences between the facts applicable to the Plaintiff and those of the Class Members.  Plaintiff is a Delta Ready Reserve employee who alleges that he was subjected to the same policies and practices regarding wages experienced by the other Class Members. Plaintiff's interests are one-and-the-same as those of the individual Class Members and, in that regard, Plaintiff seeks the same relief sought by every other Class Member.  Typicality is therefore satisfied.

### 4.   <u>Plaintiff And Class Counsel Will Fairly and Adequately Represent the Class.</u>

The representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).  To satisfy this element, a plaintiff must establish that: (a) the class

16

1   representatives do not have a conflict of interest; and (b) class counsel will adequately represent

2   the interest of the class.  *See In re Mega Fin'l Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000);

3   *Walter v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998).  Plaintiff has no interests that are adverse or

4   antagonistic to the interests of the Class.  To the contrary, the Settlement provides for across-the-

5   board monetary relief that will benefit all Participating Class Members.  (Dkt. 50-1 ¶¶ 2-8, 16, 17.)

6        Moreover, this case has been prosecuted with zeal and competence by Class Counsel, who

7   have extensive experience in employment law, complex litigation and class actions.  (Dkt. 59-1

8   ¶¶ 5-6; Dkt. 59-5 ¶¶ 4, 5.)  Class Counsel has represented the interests of the proposed Class in

9   discovery and motions practice, settlement negotiations, at an all-day mediation and during the

10  weeks thereafter, and has vigorously prosecuted this case.  (Olivier Decl. ¶¶ 3-8.); *see also Hanlon*,

11  150 F.3d at 1021 ("We find counsel's prosecution of the case sufficiently vigorous to satisfy any

12  [adequacy] concerns.").  Accordingly, Plaintiff and his counsel are adequate representatives of the

13  settlement Class.

14        **5.        Rule 23(b)(3) Requirements for Class Certification Are Satisfied.**

15        Finally, the settlement Class should be finally certified because common questions of law

16  and fact "predominate over any questions affecting only individual [Class] members," and the

17  proposed class action is "superior to other available methods for the fair and efficient adjudication

18  of the controversy."  Fed. R. Civ. P. 23(b)(3).

19        The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

20  warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Here, there is a common

21  nucleus of facts and available legal remedies among Plaintiff at bar and the putative Class

22  Members.  Each claims that Delta: failed to fully compensate him or her for overtime hours

23  worked as a result of voluntary shift swaps (Dkt. 6 ¶ 26); denied him or her meal and rest breaks

24  (*id.* ¶¶ 22, 24); improperly deducted time for denied breaks from paychecks (*id.* ¶ 23); failed to

25  make timely wage payments (*id.* ¶¶ 68, 75); required him or her to work off the clock (*id.* ¶ 25);

26  and failed to provide accurate and complete wage statements (*id.* ¶ 27).  Any individualized issues

27  are likely quite limited.

28        Further, class certification is the superior method of adjudication.  Fed. R. Civ. P. 23(b)(3).

17

The factors to be considered are: (1) the class members' interests in controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties of managing a class action.  Fed. R. Civ. P. 23(b)(3). [C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190-92 (9th Cir. 2001).

Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation.  Certification also permits the putative class to pool claims that would be uneconomical to litigate individually.  Although manageability is not a concern in the settlement context, *Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."), Plaintiff is unaware of any issues that would render unmanageable the adjudication of the class claims.

Accordingly, a class action is the superior method for adjudication of the claims in this action.

**E.   The Requested Attorneys' Fees and Expenses Are Fair and Reasonable and Should Be Approved.**

Plaintiff seeks this Court's approval of an award for attorneys' fees in the amount not to exceed $353,861, which is equal to 25% of the Gross Settlement Amount, plus costs in the amount of $15,576.04.  (Olivier Decl. ¶ 29.)  The amount Plaintiff requests is *below* Class Counsel's current lodestar.  Delta does not oppose Plaintiff's request.

On August 29, 2014, Plaintiff separately filed Plaintiff's Motion for Award of Attorneys' Fees and Expenses, along with supporting points and authorities, declarations, and exhibits

18

1  ("Motion for Attorneys' Fees").  (Dkt. 59.)  Plaintiff refers the Court to and incorporates herein the

2  arguments set forth in the Motion for Attorneys' Fees.  (*Id.*)

3        The Motion for Attorneys' Fees was filed during the Claim Period in order to ensure the

4  Class members had adequate opportunity to review the basis of the attorneys' fees and costs being

5  sought such that they may object.  *See In Re Mercury Interactive Corp. Sec. Litigation*, 618 F.3d

6  988, 994 (9th Cir. 2010).  In addition, the Motion for Attorneys' Fees and supporting documents

7  were posted on the settlement website, www.DeltaWagesSettlement.com.  No Class Members

8  have objected to the attorneys' fees and expenses sought in this action.

9        For the reasons set forth fully in the Motion for Attorneys' Fees, the fees and expenses

10  sought by Plaintiff are fair and reasonable and should be awarded.

11        **F.      The Class Representative Incentive Award Is Fair and Reasonable and Should
12                be Approved.**

13        On behalf of Class representative Andrew Bell, Class Counsel respectfully requests an

14  incentive award of $7,500 for Mr. Bell's contributions on behalf of the Class.  *See Staton v. Boeing*

15  *Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("[N]amed plaintiffs, as opposed to designated class

16  members who are not named plaintiffs, are eligible for reasonable incentive payments.") (citing,

17  with approval, cases approving incentive awards ranging up to $25,000; *Rodriguez v. West Pub.*

18  *Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action

19  cases.").  Such awards are "intended to compensate class representatives for work done on behalf

20  of the class [and] make up for financial or reputational risk undertaken in bringing the action."  *Id.*

21        "An employee who lends his name to a lawsuit against a current or former employer is

22  placed in a financially vulnerable position.  Plaintiffs who take on this risk for the genuine

23  enforcement of wage and hour provisions should be encouraged…[and] when individual plaintiffs

24  faithfully execute their duties as a class representative, they should be rewarded."  *Navarro v.*

25  *Servisair*, 2010 WL 1729538, *4 (N.D. Cal. 2010) (citations omitted); *see also Van Vranken v.*

26  *Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995); *Dornberger v. Metropolitan Life*

27  *Ins. Co.*, 203 F.R.D 118, 143 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the

28  named plaintiff for any personal risk incurred by the individual or any additional effort expended

1    by the individual for the benefit of the lawsuit.").

2           The incentive award requested here is well within the range that courts have found

3    reasonable and is justified under the circumstances of this case.[6]  In addition to lending his name to

4    this case, and thus subjecting himself to public attention, Mr. Bell has devoted considerable time

5    and effort to this case for the benefit of the Class and has performed a key role in vindicating the

6    claimed rights of approximately 1,136 individual employees working for Delta in California.

7    (Declaration of Andrew Bell ISO Plaintiff's Motion for Preliminary Approval ("Bell Decl."),

8    Dkt. 50-1 ¶¶ 10-15; Olivier Decl. ¶¶ 26-28.)  Among other things, he produced relevant and critical

9    documents, provided information regarding Delta's policies and practices, and made himself

10   available for a deposition, where he was questioned for a full day about his work for Delta and for

11   other employers.  (*Id.*)  He met with Class Counsel on several occasions, reviewed all major

12   pleadings, and responded to interrogatories and document requests.  (*Id.*)  He also actively

13   participated in an all-day mediation.  (*Id.* ¶ 11.)  Mr. Bell's commitment is all the more convincing

14   given the relatively modest size of his personal financial stake in this case.  *See* Bell Decl.,

15   Dkt. 50-1, ¶ 1 (declaring that he worked for Delta for a period of five months, which is a fraction

16   of the four year class period).

17          Plaintiff assumed and fulfilled his duties as class representative by remaining fully engaged

18   and working with counsel to actively prosecute the case.  There is no question that Mr. Bell's

19   efforts conferred a benefit on the Class.  (Dkt. 50-1 ¶¶ 10-15; Olivier Decl. ¶¶ 26-28.) The

20   proposed settlement of $1.4M provides significant financial benefits to over 1,100 employees and

21

22          [6]  Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards
23   well above the amount sought here where, as here, the class representative has demonstrated a
     strong commitment to the class.  *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d
     423, 430 (2d Cir. 2007) (approving incentive awards of $25,000 to named plaintiffs who were
24   deposed); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive
     award); *In re Connecticut General Life Ins. Co.*, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997)
25   (approving $25,000 incentive payments); *Van Vranken.*, 901 F.Supp. at 299-300 (awarding
     $50,000 incentive fee); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-
26   74 (S.D. Ohio 1990) (in estimated $18 million settlement, incentive awards ranged from $35,000
     to $55,000); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251
27   (S.D. Ohio 1991) (awarding $50,000 incentive awards); *Genden v. Merrill Lynch, Pierce, Fenner
     & Smith, Inc.*, 700 F.Supp. 208, 210 (S.D.N.Y. 1988) (granting a $20,085 incentive award).
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AND FINAL APPROVAL;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO.  13-CV-01199-YGR

1   former employees of Delta.  None of these Class Member need take any steps to obtain this

2   financial recovery; all they have to do is not opt out.

3        Finally, no Class Member has objected to the requested service award.  Thus, the response

4   of the class supports the fairness of the requested service award.  *Curtis-Bauer v. Morgan Stanley*

5   *& Co., Inc.*, No. C 06-3903 TEH, 2008 WL 7863877, at *1 (N.D. Cal. Oct. 22, 2008) (noting

6   absence of objections and approving $25,000 service award).

7        Accordingly, and with regard to the risk and expenditure of time and effort by Plaintiff, the

8   service award to Plaintiff is reasonable and should be approved.

9        **G.        The Class Administration Costs Are Reasonable and Should Be Approved.**

10       In its preliminary approval order, this Court approved Dahl Administration, Inc. ("Dahl" or

11  "Settlement Administrator") to administer the settlement in this case.  Dahl has fulfilled its Court-

12  mandated duty to send to all potential Class members the Class Notice, to update addresses, to

13  track any requests for exclusion from the Settlement, to establish and maintain the settlement

14  website, and to regularly update all counsel on the status of the Class Notice.  (Combs Decl. ¶¶ 4-

15  13; Olivier Decl. ¶¶ 30-33.)

16       In addition, much administration work remains to be done in this action.  Following the

17  Court's approval of the Settlement, Dahl will be responsible for performing the settlement

18  calculations (which calculations will be reviewed by Class Counsel), issuing the payments to all

19  Participating Class Members, continuing to regularly update counsel, and possibly performing a

20  second distribution.(Dkt. 50-3 ¶¶ 6.4.3-6.4.6.).

21       Under the terms of the Settlement Agreement, the costs of settlement administration were

22  anticipated to be approximately $15,000.  (Dkt. 50-3¶ 5.2.1.)  In fact, Dahl's total costs are less

23  than that.  The total costs are $12,519 with an additional $848 if a second distribution is required.

24  Therefore, Plaintiff seeks approval of $13,367 in Settlement Administration costs to Dahl, payable

25  from the Gross Settlement Amount.[7]  This amount is less than 1% of the Total Settlement Payment

26

27        [7] If a second distribution is not required, the additional $848 for the second mailing will
    revert back to the Settlement Fund.
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AND FINAL APPROVAL;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO.  13-CV-01199-YGR

of $1,415,444.  Dahl has submitted a declaration setting forth the reasonable steps it has already taken in order to administer this Settlement and the additional steps that will be required to complete Settlement administration following final approval.  (Combs Decl. ¶¶ 4-13; Olivier Decl. ¶¶ 30-33.)

The costs of settlement administration reflect the amount of work required to properly administer a complex plan of allocation to Class Members.  In addition to mailing out Notices to the Class Members, the Settlement Administrator is responsible for receiving, tracking, and reporting Opt-Outs and objections and resolving any of the Class Members' dates of employment or payment distribution issues.  The Settlement Administrator is also responsible for fielding calls from Class Members who have questions about the process.  Furthermore, the calculation of each Class Member's share of the Net Settlement Amount requires the Settlement Administrator to synthesize various pieces of employment data and other information regarding that Class Member to arrive at the accurate figure.  The Settlement Administrator will be responsible for accurately performing those calculations.

In light of all the work that has been done, and remains to be done, Plaintiff requests that the Court approve the payment of reasonable costs incurred by Dahl, in an amount not to exceed $13,367 to be made from the Gross Settlement Amount.

## IV.  **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that the Court finally approve the Settlement and enter the proposed Final Judgment and Order granting final approval.

DATED:  September 29, 2014            Respectfully submitted,

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

LAW OFFICE OF DEBORAH C. ENGLAND


_____*/s/ Monique Olivier*_____
Monique Olivier
Attorneys for Plaintiff and the Class